IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **JACQUIZ MCBEE # 578479,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:25-cv-00732 |
| v. ) | |
| ) | Judge Trauger |
| ) | Magistrate Judge Holmes |
| **HOLLY M. KIRBY,** *Tenn. Supreme* ) | |
| *Court Chief Justice, et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Jacquiz McBee, an inmate of the South Central Correctional Facility in Clifton, Tennessee, filed a pro se complaint under 42. U.S.C. § 1983, alleging violations of his civil rights. (Doc. No. 1). He names as Defendants Holly M. Kirby, the Chief Justice of the Tennessee Supreme Court; Joseph K. Byrd, the Administrative Office of the Courts Lead Attorney of the Indigent Services Team; and Michelle J. Long, the Administrative Office of the Courts Director, all in their official capacities.

Plaintiff also filed an Application for Leave to Proceed In Forma Pauperis ("IFP Application") (Doc. No. 2) and a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction (Doc. No. 3). The court must begin with the filing fee.

**I. FILING FEE**

Under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). From a review of Plaintiff's IFP Application and supporting documentation, it appears that Plaintiff lacks sufficient financial resources from which to pay the full filing fee in advance. Therefore, his IFP Application (Doc. No. 2) is **GRANTED**.

1

Under § 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff is hereby assessed the full civil filing fee of $350, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in Plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** send a copy of this Order to the administrator of inmate trust fund accounts at the South Central Correctional Complex to ensure that the

custodian of Plaintiff's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian of his inmate trust fund account **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance.

## II. MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

In his Motion for a TRO and Preliminary Injunction (Doc. No. 3), Plaintiff moves for a TRO and preliminary injunction against Defendants "in their enforcement of the specific provisions of Tenn. Sup. Ct. R. 13, Sec. 5(a)(3) as applied to Plaintiff on the basis of race." (*Id.* at 1). Plaintiff contends that Tennessee Supreme Court Rule 13, Section 5(a) "as applied to Plaintiff results in Defendant's [sic] intentionally treating plaintiff differently than other similarly situated individuals, due to his racial minority status as an African American." (*Id.*)

A TRO movant must comply with specific procedural requirements. First, "any request for a TRO" must be made by written motion "separate from the complaint." M.D. Tenn. L.R. 65.01(a). Second, because the movant bears the burden of justifying preliminary injunctive relief on the merits, *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014), a TRO motion must be accompanied by a memorandum of law. M.D. Tenn. L.R. 65.01(b). Third, the motion for a TRO must be supported, at a minimum, by "an affidavit or a verified complaint." Fed. R. Civ. P. 65(b)(1)(A); M.D. Tenn. L.R. 65.01(b) (explaining that a motion for a TRO "must be accompanied by a separately filed affidavit or verified written complaint"). Finally, the moving party must certify in writing "any efforts made to give notice and why it should not be required." Fed. R. Civ. P. 65(b)(1)(B); *see also* M.D. Tenn. L.R. 65.01(c) (requiring "strict compliance" with this notice provision by pro se moving parties). Plaintiff's TRO motion is procedurally compliant.

3

Plaintiff also seeks a preliminary injunction. When determining whether to issue a preliminary injunction under Federal Rule of Civil Procedure 65, the court considers four factors: (1) whether the movant has shown a strong likelihood of success on the merits of the controversy; (2) whether the movant is likely to suffer irreparable harm without an injunction; (3) whether an injunction would cause substantial harm to the opposing party or others; and (4) whether the public interest would be served by the issuance of an injunction. *Daunt v. Benson*, 956 F.3d 396, 406 (6th Cir. 2020) (citing *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012)); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Generally speaking, "district courts weigh the strength of the four factors against one another," in what is commonly described as a "balancing test." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326 (6th Cir. 2019). However, the inquiry is not a pure balancing test because the second factor—irreparable injury absent the injunction—must be present for the court to issue the requested preliminary injunction. *Id.* at 326-27 (6th Cir. 2019) ("[E]ven the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.' That factor is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit.") (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). Thus, "although the extent of an injury may be balanced against other factors, the existence of an irreparable injury is mandatory." *Id.* at 327.

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "The party seeking the preliminary injunction bears the burden of justifying such relief, including showing

irreparable harm and likelihood of success." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012).

Plaintiffs seeking a preliminary injunction may not merely rely on unsupported allegations, but rather must come forward with more than "scant evidence" to substantiate their allegations. *See, e.g., Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 417 (6th Cir. 2014); *McNeilly*, 684 F.3d at 614 (upholding denial of preliminary injunction when plaintiff made only a "small showing" of evidence); *Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir. 2020) (vacating preliminary injunction when plaintiffs made no evidentiary showing on some elements of their claim, but instead relied on mere allegations); *United States v. Certain Land Situated in City of Detroit*, No. 95-1118, 1996 WL 26915, at *1 n.1 (6th Cir. Jan. 23, 1996) (affirming denial of a preliminary injunction where the district court relied on a lack of evidence to support speculative allegations); *Boulding v. Corr. Med. Servs.*, No. 06-cv-811, 2008 WL 2095390, at *1 (W.D. Mich. Feb. 11, 2008), *report and recommendation adopted*, 2008 WL 2095387 (W.D. Mich. May 15, 2008) ("Plaintiff did not marshal any evidence in support of his motion [for a preliminary injunction]. Plaintiff's unsupported allegations do not suffice.").

The decision whether to grant a preliminary injunction is a matter within the discretion of the district court. *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009).

A. Alleged Facts

Plaintiff was convicted of first-degree premeditated murder and received a life sentence to be served consecutively to his prior three-year sentence for aggravated assault. *See State v. Jacquiz McBee*, No. E2021-01048-CCA-R3-CD, 2022 WL 16833562, at *1 (Tenn. Crim. App. Nov. 9, 2022). Plaintiff alleges that he filed a post-conviction petition on January 23, 2024. (Doc. No. 1 at 17). On October 13, 2024, Plaintiff filed an Ex Parte Supplemental Motion for State

5

Funding for Expert Witness Services. (Doc. No. 1-1 at 7-8). On January 16, 2025, Plaintiff's motion was granted by Knox County Criminal Court Judge Steven W. Sword. (Doc. No. 1-1 at 41-43). Plaintiff sent the funding order to LeAnna Ferguson (the cellular forensic analyst whose services for which Petitioner sought funding), who submitted it to the Administrative Office of the Courts for immediate payment. On March 6, 2025, Defendant Byrd denied the request, stating that the "AOC is not authorized to approve a rate in excess of that approved rate." (Doc. No. 1-1 at 45). Defendant Byrd's denial invited Petitioner to submit "an amended order for this expert at the approved rate." (*Id.*)

Plaintiff filed an amended funding order, which Judge Sword granted on March 20, 2025. (Doc. No. 1-1 at 50-52). On April 11, 2025, Ferguson resubmitted the funding request to the Administrative Office of the Courts. According to Plaintiff, "[a]fter receiving the Amended Funding order request Defendant Byrd did research into the case by contacting various Knox county court personnel and found out that petitioner was an African American pro se Petitioner in a non-capital 1st degree murder post conviction proceeding." (Doc. No. 1 at 20). On April 14, 2025, Defendant Byrd denied the request, citing Tenn. Sup. Ct. R. 13, Section 5(a)(3), stating that the AOC is not authorized to grant funding for investigative, expert, or other similar services in non-capital post-conviction proceedings. (Doc. No. 1-1 at 55).

Plaintiff submitted an appeal on April 29, 2025. (Doc. No. 1-1 at 57-68). According to Plaintiff, on May 13, 2025, Defendant Kirby denied the appeal. (Doc. No. 1-1 at 22).

According to Plaintiff, Defendants have approved state funding for expert services in other non-capital first-degree murder post-conviction proceedings when the indigent petitioners were "Caucasians/whites." (*Id.*)

B. <u>Likelihood of Success on the Merits</u>

Plaintiff alleges that Tennessee Supreme Court Rule 13, Section 5(a) "as applied to Plaintiff results in Defendant's [sic] intentionally treating plaintiff differently than other similarly situated individuals, due to his racial minority status as an African American." (Doc. No. 3 at 1). He asserts that "[t]he underlying facts are not in dispute with respect to similarly situated pro se indigent Post Conviction Petitioner's [sic] who are Caucasian, being granted funding in non-capital 1st degree Murder Post-Conviction proceeding, upon a showing of particularized need, whereas as an African American is denied funding, despite satisfying the same demanding threshold for showing a particularized need." (*Id*. at 2). Defendants' actions, says Plaintiff, violate the First Amendment, the Equal Protection Clause, and the Due Process Clause.

"Rule 13 establishes the procedures indigent defendants must use to request funds for expert services in the trial court and for the AOC Director and the Chief Justice's administrative review of the trial court's authorization of funds." *Dotson v. State*, 673 S.W.3d 204, 209 (Tenn. 2023) (citing Tenn. Code Ann. § 40-14-207(b) (2012); Tenn. Sup. Ct. R. 13). Subsection 5(a)(3) provides that, "[i]n non-capital post-conviction proceedings, funding for investigative, expert, or other similar services shall not be authorized or approved." However, there are three exceptions to this provision:

> (A) Costs for mental evaluations of a post-conviction petitioner to determine if he or she is competent to assist counsel in preparation for the post-conviction proceeding will be paid pursuant to Tenn. Code Ann. 33-7-301(a)(4)(A).
>
> (B) An order issued requiring DNA analysis will be paid on behalf of a petitioner pursuant to the Post-Conviction DNA Analysis Act of 2001, Tenn. Code Ann. § 40-30-301 et seq. Payment shall be made only upon receipt by the director of a certified copy of the order and invoice from the laboratory that conducted the analysis. The bill shall set forth the name of the petitioner, the date the analysis was performed, the amount of the bill, and the name and address of the laboratory to which payment is to be made. Tenn. Code Ann. § 40-30-313.

7

Case 3:25-cv-00732   Document 7   Filed 07/08/25   Page 7 of 12 PageID #: 167

> (C) An order issued requiring fingerprint analysis be paid on behalf of a petitioner pursuant to the Post-Conviction Fingerprint Analysis Act of 2021, Tenn. Code Ann. § 40-30-401 et seq. Payment shall be made only upon receipt by the director of a certified copy of the order and bill from the laboratory that conducted the analysis. The bill shall set forth the name of the petitioner, the date the analysis was performed, the amount of the bill, and the name and address of the laboratory to which payment is to be made. Tenn. Code Ann. § 40-30-413.

Tenn. Sup. Ct. Rule 13, Section 5(a). The Explanatory Comment to the Rule states: "Section 5(a)(3) unequivocally provides that funding for investigative, expert, or other similar services is not available in non-capital post-conviction proceedings."

Here, Plaintiff's underlying state criminal case is not a capital case, so Tenn. Sup. Ct. Rule 13, Section 5(a) applies to his requests for funding for expert witness services in support of his post-conviction petition. Plaintiff's requests did not appear to fall within one of the three statutory exceptions to Rule 13, Section 5(a)'s prohibition on the funding Plaintiff sought. However, when Defendant Byrd initially denied Plaintiff's request for funding, that is not the reason he provided. Instead, he stated that Plaintiff's requested funding exceeded the allowable limit. When Plaintiff revised his funding request, Defendant Byrd denied the request because funding for investigative, expert, or other similar services is not available in non-capital post-conviction proceedings (like Plaintiff's) and none of the three exceptions to that rule applied. Plaintiff has not submitted Justice Kirby's order denying Plaintiff's appeal, so the court is without documentation as to any reason(s) provided by Justice Kirby in denying the appeal.[1]

---

[1] The Tennessee Supreme Court has held that a Rule 13 funding decision is not subject to review and the Court of Criminal Appeals lacks authority to consider constitutional challenges to a Supreme Court rule. *See Dotson v. State,* 673 S.W.3d 204, 218 (Tenn. 2023). Plaintiff alleges that, unlike the Court of Criminal Appeals, this court has jurisdiction to consider his constitutional challenges to Rule 13. That issue need not be resolved in ruling on Plaintiff's instant motion.

Plaintiff alleges that,"[a]fter receiving the Amended Funding order request Defendant Byrd did research into the case by contacting various Knox county court personnel and found out that petitioner was an African American pro se Petitioner in a non-capital 1st degree murder post conviction proceeding." (Doc. No. 1 at 20). Plaintiff, however, does not support this assertion with evidence. *See, e.g., Husted*, 751 F.3d 403, 417 (plaintiffs seeking a preliminary injunction may not merely rely on unsupported allegations, but rather must come forward with more than "scant evidence" to substantiate their allegations).

Plaintiff offers two state cases in which he alleges that the Caucasian petitioners in those non-capital post-conviction cases received funding for expert services. He alleges that the "only difference" between those cases and his case is that he is African American, and those petitioners are Caucasian. (Doc. No. 1 at 23). Plaintiff alleges that these two cases compared to his own demonstrate an Administrative Office of the Courts "policy of denying African Americans state funding for expert witnesses." (Doc. No. 1 at 25). But two cases, without more, do not establish a policy. And the court is without sufficient information to determine whether the three cases are identical except for the petitioners' races.

Plaintiff asserts that "the AOC's approval rate of State Funding for expert service for indigent Caucasian Criminal Defendants is 85%; whereas in the same county the AOC has an approval rate of 12% Funding for African American Defendants." (*Id*.) However, Plaintiff does not support this assertion with evidence. Plaintiff further asserts that, "even when it [the Administrative Office of the Courts] deals with pretrial Criminal Defendants in Knox County, there is blatant racially discriminatory content." (*Id*.) In support of his assertion, Plaintiff cites "recent figures in Knox County" purporting to show that "White's [sic[ are six times more likely to receive state funding for Experts than Black's [sic] 'all things be equal" for Class A and Class

B felony offenses . . . ." (*Id*.) Plaintiff, however, provides no citations to his source material. And, in any event, this case deals with the alleged discriminatory application of Tenn. Sup. Ct. Rule 13, not the alleged discriminatory treatment of criminal defendants at the pretrial stage.

Plaintiff also takes issue with Defendants Byrd and Kirby finding that Plaintiff "failed to meet the exceedingly high bar for showing a 'particularized need' for State funding for the expert services of cellular Data expert LeAnna Ferguson. (*Id*. at 25-26). He maintains that Defendants "are denying Plaintiff state funding because of his race not because he has failed to satisfy the threshold showing for a particularized need." (*Id*. at 26). But Byrd's denials, provided by Plaintiff in support of his instant motion, do not reference "particularized need." And Plaintiff failed to submit Justice Kirby's order denying Plaintiff's appeal. In any event, under Rule 13, Section 5(a), a showing of particularized need is irrelevant; unless a petitioner falls within one of the three exceptions, no funding is authorized.

The court notes that Plaintiff's motion does not address whether this court has jurisdiction to hear the claims Plaintiff raises.

Accordingly, the court finds that Plaintiff has not demonstrated a strong likelihood of success on the merits of his claims alleging discriminatory application of Tennessee Supreme Court Rule 13. The burden is on Plaintiff to justify the extraordinary relief he seeks, McNeilly v. Land, 684 F.3d 611, 615 (6th Cir. 2012), and Plaintiff has not met his burden.

C. Irreparable Harm

The second factor the court considers is whether Plaintiff will suffer irreparable harm absent the issuance of the requested injunction.

Plaintiff alleges that he "will suffer immediate, irreparable harm" unless his requested order issues because Defendants' application of Rule 13 "results in a situation wherein he is, in

effect, subject to intentional racial discrimination . . . ." (Doc. No. 3 at 8-9). This allegation, without more, is insufficient. Plaintiff cannot "merely rely on unsupported allegations" to show that he will be irreparably harmed absent an injunction. *Doe #11 v. Lee*, 609 F. Supp.3d 578, 592 (M.D. Tenn. June 16, 2022). Thus, with respect to the second factor, Plaintiff has not demonstrated that he will be irreparably harmed absent the injunction he seeks. *See D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326-37 ("[E]ven the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.' That factor is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit.") (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

D. <u>Remaining Factors</u>

Having found that Plaintiff has not demonstrated a strong likelihood of success on the merits nor has he shown that he will be irreparably harmed absent the injunctive relief he seeks, the court declines to examine the remaining two factors—substantial harm to others and public interest. *See Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) ("The district judge 'is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.'" (quotation omitted)); *Mascio v. Pub. Emps. Ret. Sys. of Ohio*, 160 F.3d 310, 315 (6th Cir. 1998) (affirming the district court's issuance of a preliminary injunction based on the district court's conclusion that the plaintiff showed a likelihood of success on the merits); *Blount Pride, Inc. v. Desmond*, 690 F. Supp.3d 796, 802 (E.D. Tenn. 2023) (when the court is able to determine the propriety of a temporary restraining order by relying on fewer than all four factors, it may do so).

## III. CONCLUSION

Plaintiff has not shown that the circumstances clearly demand the extraordinary remedy of a TRO or preliminary injunction. Accordingly, Plaintiff's motion (Doc. No. 3) is **DENIED**.

In due course by separate Order, the court will conduct the required screening of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and Section 1915A. No additional action is required by Plaintiff at this time.

Plaintiff is reminded that failure to promptly inform the court of any change in address may result in dismissal of the case without further Order. M.D. Tenn. L.R. 41.01(b).

Resources for pro se litigants are available free of charge on the court's website as well as by request to the Clerk's Office so long as the privilege is not abused.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge